## MASSACHUSETTS EYE AND EAR INFIRMARY, Plaintiff,

### v.

## QLT PHOTOTHERAPEUTICS, INC., Defendant.

### QLT Phototherapeutics, Inc., Counter–Claimant

### v.

### Massachusetts Eye And Ear Infirmary, Evangelos S. Gragoudas, M.D., and Joan W. Miller, M.D., Counter–Defendants.

### No. CIV.A.00–CV10783(RCL).

United States District Court, D. Massachusetts.

April 13, 2001.

John J. Cotter, Douglas J. Kline, Timothy P. Linkkila, Duncan A. Greenhalgh, Reica B. Abate Recht, Testa, Hurwitz & Thibeault, J. Patrick Kennedy, Testa, Hurwitz & Thibeault, Boston, MA, for Plaintiff.

Donald R. Ware, Barbara A. Fiacco, Foley, Hoag & Eliot, Denise W. DeFranco, Foley, Hoag & Eliot LLP, Boston, MA, Paul G. Cushing, Juliet A. Davidson, Todd & Weld, Thomas F. Maffei, Griesinger, Walsh & Maffei, LLP, Boston, MA, for Defendants.

Lee Carl Bromberg, Bromberg & Sunstein LLP, Boston, MA, for Special Master.

LINDSAY, United States District Judge.

Amended Report and Recommendation accepted.

*AMENDED REPORT AND RECOMMENDATION RE: MEEI'S MOTION FOR PRODUCTION OF DOCUMENTS WITHHELD BY OLT ON THE BASIS OF ATTORNEY–CLIENT PRIVILEGE WITH MORRISON & FOERSTER LLP*

Lee Carl BROMBERG, Discovery Master.

Pursuant to Fed. R. Civil Proc. 53(e)(1), on March 2, 2001, I filed with the Clerk of the Court a Report and Recommendation Re: MEEI's Motion for Production of Documents Withheld by QLT on the Basis of Attorney–Client Privilege with Morrison & Foerster LLP ("Report"). The Report recommended that the motion filed by Massachusetts Eye and Ear Infirmary ("MEEI") be allowed-in-part and denied-in-part and that QLT Phototherapeutics, Inc. ("QLT") be ordered to produce documents, on various matters, from March 3, 1994 to September 30, 1998. Report at 33–34. The Report also noted that objections to the Report must be filed with the Clerk of the Court within ten days of receipt of the Report, *i.e.*, no later than March 16, 2001.

On March 12, 2001, QLT filed a motion to amend the Report based on additional evidence. On March 13, 2001, MEEI filed an opposition to QLT's motion. In light of QLT's motion and a discussion with counsel of record for QLT and MEEI, on March 15, 2001, I suspended the time for filing objections to the Report pending a decision on QLT's motion.

### Discussion

■ A joint attorney-client relationship may terminate when circumstances "readily imply" to the joint clients that the joint clients no longer share the same, or nearly the same, legal interest. *Federal Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d 454, 463 (1st Cir.2000). In regard to MEEI's and QLT's joint attorney-client relationship with Morrison & Foerster, LLP ("Morrison & Foerster") for the preparation and prosecution of U.S. Patent Application Serial No. 08/209,473 (" '473 application") and U.S. Patent Application Serial No. 08/390,591 (" '591 application"), an October 1, 1998, letter, sent from MEEI to QLT, readily implied that MEEI's and QLT's respective legal interests in the '591 application, which had now issued as U.S. Patent No. 5,798,349, were no longer the same, or nearly the same, legal interest.[1] Report at 30–31. In the October 1, 1998, letter, MEEI proposed a meeting with QLT to discuss

> the granting of an exclusive license by [MEEI] of its rights in the practice of neovascular therapy using green porphyrin dyes, including rights to practice the subject matter of the patent claims

---

1. As discussed in the Report, the divergence of MEEI's and QLT's respective legal interests in the '473 application, which issued as U.S. Patent No. 5,707,986 on January 13, 1998, is

co-extensive with the divergence of MEEI's and QLT's respective legal interest in the '591 application. *See* Report at 31.

filed by [MEEI] on October 2, 1997 in a continuation application of [the '591 application] . . . .

Letter from Putukian to Kaufman–Shaw of October 1, 1998, at 1 (QLT Reply Brief at Ex. Y). MEEI then proposed various terms and conditions for the license. In conclusion, MEEI stated: "Needless to say, should an interference be declared, different terms would apply." *Id.* at 2. In an "interference" in the U.S. Patent and Trademark Office ("PTO") against QLT, MEEI could seek to have the PTO determine whether MEEI personnel, as opposed to MEEI and QLT personnel, first conceived and reduced to practice the subject matter claimed in the '591 application. *See* Report at 31.

■ In its motion, QLT argues that MEEI "put QLT on notice of MEEI's unilateral filing of the continuation application" as early as October 21, 1997, in a letter sent from MEEI to QLT. QLT Motion to Amend at 2–3. In the October 21, 1997, letter, MEEI outlines its expectations in negotiations between MEEI and QLT for MEEI's granting of an exclusive license to QLT

> for the treatment of age related macular degeneration (AMD) by the method described and claimed in a patent application recently filed on behalf of MEEI
> . . . .

Letter from Finn to Dolphin of October 21, 1997, at 1 (QLT Motion to Amend at Ex. GG). In addition, MEEI states:

> As you know, we have always maintained that the generic methods for treating unwanted choroidal neovasculature and age related macular degeneration using photodynamic therapy with green porphyrins were conceived and reduced to practice solely by MEEI personnel.

*Id.* Thus, QLT argues that both MEEI and QLT understood as early as October 21, 1997, that MEEI and QLT no longer shared the same, or nearly the same, legal interest in the '591 application. QLT Motion to Amend at 2–3.

However, contrary to QLT's assertions, the October 21, 1997, letter did not inform QLT about the "continuation application." The October 21, 1997, letter states that MEEI filed "a patent application" for the treatment of AMD. The letter then notes that MEEI maintains its belief that MEEI personnel are the sole inventors of generic methods for treating unwanted choroidal neovasculature and AMD using photodynamic therapy with green porphyrins. The treatment of unwanted choroidal neovasculature and AMD using photodynamic therapy with green porphyrins is the subject matter disclosed in both the '473 application and the '591 application. Thus, based on the October 21, 1997, letter, MEEI's 1997 patent application might have been a continuation patent application of the '473 application—which names MEEI personnel as the inventors, a continuation patent application of the '591 application—which names MEEI and QLT personnel as the inventors, or a new patent application. Accordingly, while QLT might have suspected that MEEI's 1997 patent application was a continuation patent application of the '591 application, the October 21, 1997, letter does not readily imply that fact.

■ Moreover, the October 21, 1997, letter does not readily imply that MEEI was seeking to have the PTO declare an interference between the 1997 patent application and the '591 application. In order to have the PTO declare such an interference, MEEI's 1997 patent application would need to claim the same patentable invention as that claimed in the '591 application. *See* 37 C.F.R. § 1.603 (describing subject matter of such an interference).

*See also* 37 C.F.R. § 1.601(i) (defining the term "interference"). However, if MEEI's 1997 patent application was a continuation of the '473 application, then MEEI's 1997 patent application could not claim the same patentable invention as that claimed in the '591 application because the '591 application added information to the disclosure of the '473 application—information needed to ensure the claims of the '591 application were patentable, *i.e.*, met the requirements of the patent statute. The PTO will not declare an interference between pending patent applications if the claims recited in one of the patent applications are not supported by that patent application's disclosure. *See* 37 U.S.C. § 1.603 (interfering subject matter must be "patentable" subject matter).

Accordingly, the October 21, 1997, letter did not inform QLT that (1) MEEI had filed a continuation application of the '591 application and (2) MEEI was seeking to have the PTO declare an interference between MEEI's 1997 patent application and the '591 application. In other words, unlike the October 1, 1998, letter, the October 21, 1997, letter did not readily imply that MEEI's and QLT's respective legal interest in the '591 application was no longer the same, or nearly the same, legal interest.

QLT also argues that MEEI's and QLT's legal interest in the '591 application was no longer the same, or substantially the same, legal interest, as early as July 31, 1997, based on a letter sent from Edmund R. Pitcher of the law firm of Testa, Hurwitz & Thibeault, LLP to Kate H. Murashige of the law firm of Morrison & Foerster. QLT Motion to Amend at 2 n. 1. In the letter, Mr. Pitcher stated:

> If [MEEI] and QLT cannot come to an agreement on a reasonable royalty rate and other financial terms, we are instructed to assume responsibility for prosecution of patent applications covering subject matter invented without the involvement of Dr. Levy so as to try to preserve MEEI's rights.

Letter from Pitcher to Murashige of July 31, 1997, at 2 (QLT Opposition Brief at Exs. M and Q). Accordingly, QLT argues that Mr. Pitcher's threat to file these patent applications "implicitly acknowledged that Dr. Murashige was no longer representing MEEI's interests." QLT Motion to Amend at 2 n. 1.

However, Dr. Murashige's own actions belie QLT's argument. On June 16, 1997, Dr. Murashige sent a letter to MEEI, Massachusetts General Hospital ("MGH"), and QLT regarding the pending issuance of the '591 application. In the letter, Dr. Murashige stated:

> As you know, this brings us to a decision point as to the correct inventorship in this application. In addition to the inventors already named, there appears to be an issue with respect to Dr. Birngruber. In a separate letter, in a week or so, I will send you my thoughts as a starting point on evaluating inventorship.

Letter from Murashige to Clegg, at 1 (MEEI Brief at Ex. D). At MEEI's request, Mr. Pitcher responded to Dr. Murashige's letter, sending his July 31, 1997, letter. On August 8, 1997, Dr. Murashige sent her promised follow-up letter. In that letter, Dr. Murashige advised MEEI—as opposed to MEEI's counsel, MGH, and QLT that "the inventors currently listed on the ['591] application are proper." Letter from Murashige to Clegg, Finn, and Glass of August 8, 1997, at 2 (QLT Opposition Brief at Ex. N). Thus, even after receiving Mr. Pitcher's July 31, 1997, letter, Dr. Murashige continued to provide MEEI with legal advice on the '591 application. Accordingly, like the October 21, 1997, letter, Mr. Pitcher's July

31, 1997, letter did not readily imply that MEEI's and QLT's respective legal interest in the '591 application was no longer the same, or nearly the same, legal interest.

### Conclusion

In accordance with the foregoing decision and the decision set forth in the Report, which is incorporated by reference herein, I recommend that QLT's motion be denied.

MEEI and QLT are notified that further motions to amend the Report, or motions to amend this Amended Report, will not be entertained.

MEEI and QLT are reminded that any objections to the Report and Recommendation filed March 2, 2001, as well as any objections to this Amended Report and Recommendation, must be filed with the Clerk of the Court within ten days of receipt of this Amended Report and Recommendation. The objections must identify the portion of the Report and Recommendation filed March 2, 2001 and/or this Amended Report and Recommendation to which objection is made, and must state the basis for such objection. MEEI and QLT may respond to each other's objections within ten days after service of the objections. MEEI and QLT are further reminded that the failure to file objections within the specified time waives the right to appeal the district court's order.